STODDARD (WILSON v.). See Case No. 17,838.

---

## Case No. 13,471.

### STODDART v. WARREN.

[7 Reporter, 517.] [2]

Circuit Court, N. D. Illinois. 1879.

CONTRACTS—SUBSCRIPTIONS FOR BOOKS—PARTIES —SUBSCRIPTIONS CANCELLED OR TRANSFERRED BY CANVASSERS.

1. Orders or subscriptions for a book taken by a general agent, or by a canvasser, authorized by the publisher, are contracts between the publisher and the subscriber. In any event, the agent or canvasser is only liable as a guarantor, or where bad faith is shown.

2. An agent for subscriptions or a canvasser of books has no right to cancel subscriptions or to transfer them to another party.

This action embraces three original actions brought by plaintiff against defendant upon certain promissory notes and accounts. The

[1] [Reported by A. J. Dallas, Esq.]
[2] [Reprinted by permission.]

defendant admitted the demands, but pleaded a set-off. It appears that defendant was the general agent of plaintiff for the sale in the Northwest of an American reprint of the Encyclopædia Britannica, issued by plaintiff in parts, at Philadelphia. The work was to be sold by subscription, and to be furnished to defendant at certain rates. The British publishers of the work subsequently arranged for its sale in this country through a Mr. Hall. The defendant requested plaintiff to consent that he might act as Hall's agent, which was refused. The defendant thereupon notified plaintiff that he should in future canvass the "Hall edition" only. In the mean time he had obtained a large number of subscribers for the plaintiff's edition. The plaintiff refused to fill defendant's orders for these subscriptions except for cash. The defendant then, as he claims, to protect himself, and at a great expense, induced a large number of the subscribers to exchange their subscription for the "Hall edition," taking back the reprint volumes. He claims for such expense, for loss on the volumes returned him, and also for profits on subscriptions not exchanged. It is contended, on the part of the defendant, that he was not bound to continue in the execution of this contract for any specific or certain time, but that he was at liberty to suspend operations under it at any time, when it appeared to him to be his interest to do so; but that the plaintiff was bound to supply him with books to fill all orders during the time he was engaged in working under the contract. In other words, that the defendant might, at his option, stop at any time canvassing for the plaintiff's books, but that the plaintiff was bound to supply the books to fill the orders taken upon the terms provided for in the contract; and upon this basis of a construction the defendant makes his claim for damages.

Tenney & Flower and J. R. Sypher, for plaintiff.

Higgins & Sweet, for defendant.

BLODGETT, District Judge, (charging jury). After a careful study of the contract, I am of the opinion that this undertaking was entered upon, probably, by the parties with the expectation that it would continue during the time that the book was to be in the process of issue, that is, during the time the entire issue was coming out; and it was also expected that during that time the defendant would continue his canvass for the work within the territory assigned. or at least that his canvass would be continued until such time as he had made a thorough and complete canvass of the field assigned to him.

The question is: Had the defendant the right to obtain a cancellation of the orders he had secured for the plaintiff's book, and substitute orders for the Hall book, and charge the expense of so doing to the plaintiff? Upon this question I am very clear that he had no such right. The orders in question had been ob-

tained by the defendant as the plaintiff's agent. Both parties, we may say, had an interest in them. The defendant could not, without the consent of the plaintiff, secure the cancellation of those orders. and charge the plaintiff with the expenses he incurred in so doing. This would be a wrong toward the plaintiff, who had the right to the benefit of these orders to the extent to which they had been taken. The defendant contends that he was obliged to do this in order to protect himself from the contracts he had made with his subscribers, and which he was unable to fill by reason of the plaintiff's refusal to sell him books on credit to fill them with. It seems to me, however, that two courses lay open to the defendant in this emergency: first. to have paid the plaintiff cash for the books required to fill the orders which he had taken, for I do not think the plaintiff was bound to give the defendant credit for stock after the defendant had broken the contract; or, secondly, to have turned these orders over to the plaintiff and allowed him to fill them on proper terms of equity between them. I do not agree with the defendant that. he was in such peril from the contracts which he had made with these subscribers as to justify the course he took in cancelling this large number of them. The contracts with the subscribers are, in my opinion, binding contracts upon the plaintiff himself, made by the plaintiff's duly authorized agent, the defendant, and it is at least doubtful to my mind whether the defendant is personally liable on them at all. In any event, he is only liable in the nature of a guarantor, or where bad faith is shown. It seems to me it would be a sufficient answer by Mr. Warren to any subscriber who demanded books according to the terms of the subscription to refer the subscriber to the plaintiff, and demand of the plaintiff, in behalf of such subscriber, that he should fulfil the contract which Mr. Warren had made with the subscriber as Stoddart's agent. It would follow, then, that the defendant had no right to take back from the subscribers the reprint volumes which he had delivered on orders, and to charge the plaintiff with the difference between what he paid the plaintiff for those volumes and what he could sell them to Hall, or Scribner, Armstrong & Co. for, making $5,012 of the item of $12,206.45 damages claimed. And with regard to the four hundred and eighty subscriptions still outstanding, I am equally clear that the defendant has no right to charge as damages in this case the profits he might have made on the filling of those subscriptions if the plaintiff had sold him the books on credit to fill them. First, because those profits are uncertain. The subscribers may not take the books when tendered to them. There is no proof that they have ever demanded a fulfilment of the orders by the defendant, and, as has been frankly suggested by defendant's counsel, a large percentage of these orders may prove wholly worthless; the parties may have died, or become insolvent, or positively refuse to take the books, although they have subscribed and agreed to do so, and also that they may have removed from the country, and be beyond the reach of the defendant. Secondly, because the defendant might have obtained the books to fill these orders by payment of the cash to the plaintiff as he needed the stock. Thirdly, the defendant can relieve himself of all responsibility in regard to these orders by requesting the plaintiff to fill them in accordance with the terms of the contract with the subscribers.

It is urged that the defendant was not required to turn these orders over to the plaintiff, because he had an interest in them, but I am not prepared to say that the defendant would lose his interest in these orders by requesting the plaintiff to fill them. Probably a court of equity, if not a court of law, would protect the defendant so far as his interest in the profit of filling these orders was concerned; but that is not a material question to this case, but an important question is: Was the plaintiff obliged, after the defendant had terminated his contract, to intrust the defendant with the filling of these orders, which the defendant had taken for the plaintiff, and after the defendant had transferred his allegiance from the plaintiff's book to that of a competing book? The only question here is: Can the defendant set off these damages claimed by him as against the plaintiff's demand here in suit? I am of the opinion he cannot. When the defendant elected to become the agent of the plaintiff's competitor, and in effect to assume from that time forward a hostile position to the plaintiff's interests in the publication of plaintiff's books, I think the rights of the parties under this contract are so far changed in regard to the completion of orders taken by the defendant, as the plaintiff's agent, as to call for the application of such equitable principles as would protect both parties, inasmuch as the contract does not provide for that contingency. The plaintiff might justly doubt whether the defendant would in good faith proceed to fill all the orders taken for the plaintiff's book, and might with propriety, it seems to me, insist that he would only supply the defendant with books to fill those orders on payment of the cash. and he might also, perhaps with equal propriety, demand that the subscriptions which had been obtained should also be turned over to the plaintiff himself, or some third person, in trust, to be filled in good faith, and the profits fairly divided according to the terms of the contract. I am clear, that when the defendant saw fit to terminate the contract before it was completed, and while there was no provision for executing such orders as had been taken, that the right of defendant to credit under the contract ceased, and new terms should be made in regard to the manner in which he should be furnished with stock so required.

Verdict ordered for plaintiff.

[NOTE. Pursuant to the above directions of the court, the jury brought in a verdict for

plaintiff for $2.976.53, upon which judgment was entered. The cause was then taken by writ of error to the supreme court. where the judgment of this court was affirmed. 105 U. S. 224.]